We could hear next in Re Magnesium Corporation. Good morning, Your Honors. May it please the Court. Josh Rosenkranz, representing the appellants. Your Honors, I'd like to spend my time this morning focusing on two points. First, this case went to the wrong fact finder. This should have been a bench trial, not a jury trial. Before whom? The bench trial, you wanted it before whom? Before whoever, whomever the district court directed, we would have been fine. Well, I just want to be sure I understand it. This case started in the bankruptcy court, right? Correct, Your Honor. The trustee withdrew the reference and it went to the district court at that time with an agreement by the parties that it would be a jury trial. Am I right so far? You are correct so far, yes, Your Honor. Then, three months before the jury trial, your client advises the district court that you want to withdraw that consent, which the district court denies. Correct. All right. It's not clear to me when you said you wanted to withdraw the consent, did that mean you wanted to go back to the bankruptcy court or that you wanted Judge Nathan to try the case? Your Honor, we did not specify. What we said was that we did. Tell us what you're looking for here. We would be perfectly happy with a remand, a very modest remedy, a remand to the district court either to, excuse me, a remand to the district court to decide for itself what the verdict should be, to decide whether it can do so based upon the evidence it has already heard or whether it needs to hear testimony again. Alternatively, the district court has the option of sending it back down to the bankruptcy court. We would be fine with any one of those. Would you also be fine with the idea of the district court using the fact findings of the jury as an advisory opinion? Absolutely, Your Honor. The district court has that option. It always has that option. And all we're asking for is that the correct fact finder decide this. And let me then – Can you point to any cases that say that you have the right to withdraw your agreement to have a jury try this case? So, Your Honor, I would not refer to it in terms of right. I would refer to it in terms of the authority of the district court. The answer is yes. The Seventh Circuit in Kramer said that you have the right to withdraw. The right to request a withdrawal. No, no, no. To withdraw. The Seventh Circuit saw it as a matter of authority. The district court did not have our consent for a jury trial because we withdrew our consent. It was three months before there was a trial. Did the district court have any discretion in allowing you to withdraw your consent? Your Honor, there are circuit courts that have said there is no discretion. There are other courts that have – You can start a trial in front of the jury and then stand up and say, you know, we're going to withdraw this consent? I'm pretty sure not, Your Honor. I'm pretty sure not, too. Yes. What's the basis for the Seventh Circuit saying that it's of right? Because having clerked on the Seventh Circuit, it's my second favorite circuit, but it doesn't control us. What's the basis for saying that it's of right rather than a matter for the district court to consider in light of the circumstances in which the withdrawal arises? Your Honor, the answer is the Seventh Circuit looked at the language of the rule. The rule does not say – this is Rule 39. It says with consent, if you don't have consent, as is the case in so many areas of consent, if consent is withdrawn, there is no consent. Where does the rule talk about consent being withdrawn? It talks about consent being given, but I'm not sure it talks about consent being withdrawn. And, Your Honor, I'm responding to the question of what the Seventh Circuit held. The Seventh Circuit's – You want us to conclude that when the party who is giving consent stands up and says they've had a change of heart, the district court has to accept the withdrawal. And I would like to know what supports that conclusion as opposed to the court having discretion. Your Honor, let me answer in two ways. Please. First, the comparison of Rule 38 to Rule 39. So Rule 39 is about non-jury issues that have consent to go to the jury. Rule 39 puts a time limit on it, and that's absolute. But let me answer in the second way, because no court out there has ever held that you cannot withdraw consent and has ever held that a withdrawal of consent was not to be granted. So, in other words, there is not a court out there that has denied the request and never— Could it be granted once trial started? I mean, we could play this game where, you know, could it be granted the day before trial, which I think, again, is dubious. Could it be granted two weeks before, and then we have the situation we have here, three months before? I mean, I'll ask your adversary how they would have been prejudiced by a grant at that point in time. But all of this leads me to think that it's got to be a matter for the district court to decide in light of the circumstances in which the withdrawal is made. And you're saying, no, it has to be granted. No, Your Honor. So let me answer that question directly. If it is a matter of discretion, three months before trial, without any showing of prejudice on the part of the plaintiff, would be an abuse of discretion to deny. Plaintiff did not articulate any manner in which moving from what was assumed to be a jury trial to a bench trial three months in advance— The district court indicated that in a short sentence. The district court had no basis for that conclusion. The only thing plaintiff has argued was sunk costs in the district court. But those costs were sunk, and they would have been sunk in the bankruptcy court or in the district court. But shifting from a jury trial to a bench trial three months in advance, it's a very easy thing to do. Well, let me focus on a slightly different issue, also having to do with the withdrawal of consent. Would you show me where in the record your client withdrew consent to a jury trial in connection with the aiding and abetting a breach of fiduciary duty? Well, Your Honor, we withdrew consent with respect to the entire case. And if the question is, why is there— So show me where you did that, because I looked at the record. And if you look at 451 of the appendix, you withdraw consent as to certain claims or accounts, not as to all of them. And you make it very clear throughout the litigation, at least in connection with the withdrawal of consent, that you are withdrawing consent for the fraudulent conveyance claims, the fraudulent transfer claims, and maybe one other claim, but not the aiding and abetting. Your Honor, plaintiff has never made the argument that the withdrawal was as to some claims and not to others. We were very clear we did not want a jury trial. And let me just— It's not irrelevant because the judge ultimately thought that some of your claims would support a jury trial and that that was part of the reason that it didn't grant this. It thought that they had a right to a jury trial on some of the claims. No, Your Honor. The district court—I mean, that is an argument that plaintiff is making, but the district court found an exception to what this court has articulated as a categorical rule. But let me address this fiduciary duty point, because I think it's very important. Plaintiff was not entitled to a jury trial on a breach of fiduciary duty. Why don't you first, though, answer Judge Loyer's question, which is, did you withdraw on the aiding and abetting the fiduciary duty claim? Yes, Your Honor. We withdrew consent as to a jury trial, plain and simple, on all claims. Where would you ask us to look for that in the records so that we do have it in front of us? Oh, so let me just get the page number for the withdrawal. But plaintiff never claimed a jury trial right as to the breach of fiduciary duty down in the district court. So there was no need to specify that as a basis on which the consent to a jury trial should be withdrawn. Even though that was the subject of a jury trial? No, not the—so the breach of fiduciary duty was rolled into the rest of the jury trial, but the plaintiff's claim of right to a jury trial was a claim relating to the fraudulent conveyance and fraudulent transfer. And because he didn't claim a right to a jury trial with respect to the breach of fiduciary duty, we didn't need to withdraw consent specifically with respect to that. But let me explain why the breach of fiduciary duty did not entitle him to a jury trial right. The first is that the fiduciary duty claim here relies on a finding of fraudulent conveyance. And so it rises and falls with the fraudulent conveyance. And the fraudulent conveyance is the item that we've already—that, as plaintiff has acknowledged, is generally the item that, when you filed a proof of claim, will be enough to absolve—excuse me, to negate the right to a jury trial. But secondly, the very case that plaintiff cites, which is Pereira, this Court recognized that there is generally no jury trial right with respect to fiduciary breach claims, with the exception of situations not present here, and that is the situation where the claim is not, you took my money and pocketed it, now give it back to me, but rather you hurt me in some way for which I'm now demanding compensation. And then just to— Of course, then again, you could consent—your client could consent to a jury trial of those claims, correct? We could have if the plaintiff had requested it. But the plaintiff didn't request it with respect to that. But isn't it implicit in your consent that the consent apply to all charges? I mean, you were—until you tried to withdraw your complaint, the case was going forward to a jury on all claims. So that was because you had consented to it. Well, it's because we consented to those claims for which the plaintiff requested a jury trial. And then, yes, we—and by default, we consented to everything else. We then withdrew consent as to everything else. But you would—if by default you consented to everything, there might be an issue about whether you had to withdraw consent. Your Honor, it would be really unfair to hold us to the narrow confines of our—of a withdrawal where no one ever said, oh, wait a minute, the withdrawal is limited. We would have come back and said, no, of course. So at 447 of the appendix, again, there's a letter to Judge Nathan from the plaintiff where they make it clear, at least, that their view was that they were—that the consent applied to all of the claims. Right. So that's November 2014. And we responded by saying, we do not consent to a jury trial. We didn't specify which claims we were not consenting to. Your time is up, but I do want to ask you one question before you sit down. As I understand your adversary's position, they're arguing, at least in part, that the trustee's withdrawal of the reference to the bankruptcy court was based on the agreement that it would go to the district court for a jury trial. And that it's the—it's that reliance that they're saying precluded you from then saying to the district court, well, now that we're here, we don't want a jury trial. Do you want to respond to why that shouldn't be persuasive? Well, Your Honor, it sounds like a judicial estoppel point, that somehow because we consented once and agreed that there was a right to a jury trial, we can't withdraw it. No, but it's not just consent to a jury trial. It's a consent that results in it coming before the district court rather than staying in the bankruptcy court. Right, Your Honor. And the answer is, if there's going to be an estoppel theory like that, it's got to be based upon some unfair advantage that we garnered from being before the district court in a way that makes it unfair to shift back to a bench trial. Now, I know my time is up, but I did want to address the compromise verdict. At the time you were serving three minutes for rebuttal, do you want to use that time? No, thank you, Your Honor. Judge Rauji, and may it please the court. First of all, counsel miscites the Seventh Circuit case, which is the only appellate authority that they cite. In Kramer, the court of appeals merely determined, affirmed the district court's determination that it was not too late to withdraw the consent to a jury trial. Here, the district court properly determined that it was too late. And indeed, unless the district court has such discretion, which this court has recognized in the Pierce v. Underwood case, it allows a party to use their consent and withdrawal of consent to gain a litigation advantage. Why was it too late? They're pointing out they made the application three months before the trial. It's actually not true, Your Honor. They filed their motion seven weeks before trial. The actual motion, which, as Judge Lohier points out, only covers a limited number of the claims before the court. Now, what they did is after they received Daubert and other summary judgment rulings that they didn't like in the bankruptcy court, they then said, we're going to refuse to allow a jury trial in bankruptcy court. They admitted on the record that we were entitled to a jury trial on all of our claims. That is at A241. And as a consequence, we withdrew the reference in order to pursue a jury trial on all of our claims. And we made it clear at A1380 that we wanted a jury trial on all of our claims, including fiduciary duty. Now, their claim that fiduciary duty is not subject to a jury trial was only raised in their reply brief. Their opening brief talked only about fraudulent conveyance. Mr. Rosenkranz points out that you did not make precisely this argument about the breach of fiduciary duty claim. I'm sorry. I believe that his point is you're not making this claim about the aiding and abetting breach of fiduciary duty claim. Well, that's true. Although they did not specify. The reason fiduciary duty is amenable to a jury trial is based on this court's. Not when there's restitution. Correct. And we sought compensatory damages in this case. Your argument is you wanted return of certain monies that were paid. I mean, I was looking at the record, and that seems to be how you argued this. If you look at the trustee's complaint at A1361, we sought compensatory damages. If you look at the judge's instructions to the jury at A3810, she said they are seeking compensatory damages. That's what we were seeking. We were not seeking restitution of particular funds. Indeed, Mr. Rennert never even received any of the funds directly. And yet we were seeking compensatory damages for him for aiding and abetting the breach of fiduciary duty by Renko. Moreover, there are two other reasons why the court doesn't need to decide whether we have a right to a jury trial under the fraudulent transfer claim, which we clearly do under this court's decision in Germain. And indeed, plaintiffs all but admit that in their opening brief when they say that what their purpose is is to preserve the issue on certiorari. Because Germain said directly that a breach of fiduciary claim may be brought by a trustee as long as it's not inextricably intertwined with the bankruptcy proceeding. And the claim here is clearly not inextricably intertwined. It's completely separate from the bankruptcy proceeding and will be paid separate and apart from the bankruptcy proceeding. Moreover, as I noted, their tactical use of the withdrawal of their consent seven weeks before the trial, the judge has to have discretion to deny such a belated request, particularly after the whole course of the case has changed by shifting it from bankruptcy court to district court, causing a year of delay and considerable expense for the parties as well as burden for the court. Because as soon as they got in district court, they asked the court to undo all the rulings of the bankruptcy court. So there was considerable activity there. But counsel says he's satisfied to have the decision made by the district court. I could see where that argument would be persuasive if what he were insisting on is a bench trial before the bankruptcy court and all this effort in the district court was wasted. But he's saying no, he just wants the district court to review the record and make its own findings. He did not specify, but we would not have withdrawn the reference unless they had indicated that they were not going to consent to a jury trial. Why is that? Counsel says there was no advantage to them in being in the district court. What's your response? The bankruptcy court had already decided all the issues. We were ready to go. We did not want the extra delay caused, but we wanted a jury trial for our claims. And that's why we brought them to the district court and withdrew the reference. For them to then tactically decide, okay, at the last minute we want to disrupt this and take away the jury trial right, the judge was clearly within her discretion in denying that motion. Can I ask you about another topic, and that is the definition of insolvency, the difference between the federal bankruptcy definition and the New York state law definition? How truly were they different so that the jury could proceed on the two different causes of action? Is it just the saleable aspect of the New York definition, or is there something else that's . . . This was a subject of considerable dispute during the formation of the jury instructions. The defendants wanted to use the federal definition, which they said was a stricter version of insolvency than the New York definition. We wanted the New York definition. What the court did is, for fraudulent transfer, used the federal definition. For fraudulent conveyance, used the New York definition. The jury was told that those definitions were separate. The jury was invited to go on and decide fraudulent conveyance regardless of what it decided with respect to fraudulent transfer. So, first of all, the argument is triply waived in the sense that they didn't object to the jury instructions, and they still don't. They didn't object to the jury verdict form, and they still don't. And they don't claim that . . . they did not raise any sort of inconsistency argument before the jury was discharged. But as to your specific question, New York law focuses on present saleable value. And the reason we thought that was important and argued for that definition, which they have not challenged on appeal, is because we put in a lot of evidence that the assets in question had no present saleable value because of the severe environmental problems governing the property in question. And, indeed, they weren't able to sell them in bankruptcy. Nobody was going to buy those assets. Did your expert testify to that effect? Yes, he testified that the assets in question were subject to substantial environmental liability. And that would affect the saleability of them? And that would affect the saleability of the assets, correct. But am I correct in understanding that your view is that that would at best support an inconsistent verdict argument which was never made, not the compromise verdict challenge that's being presented? Correct. The inconsistent verdict argument was triply waived, as I said, and they can't come back and sneak that in through the back door by dressing it up as an inconsistent verdict argument. I mean, a compromise verdict. What do you think is the difference between an inconsistent verdict and a compromise verdict? In a compromise verdict, there has to be clear evidence on the face of the proceedings that the jury reached a compromise. And there is no such indication here. There isn't any of the usual indicia such as— A compromise not supported by the facts and the law, right? I mean, it has to be one that is at odds with the facts and the law. That's why the most obvious example that's always cited is that if you sue for liquidated damages and the jury finds for you but awards you something else, that that's a compromise verdict. Or the classic case is that they find that the police officer had qualified immunity and yet they award damages, or they find that the police officer used excessive force but they award no damages. And those are indicia of compromise. There's no indicia of compromise here. The jury gave us 99% of what we requested. And as the court has indicated in the Cash case among others, having two general verdicts that seem to clash is not a basis even for an inconsistent verdict claim, much less for a compromise verdict claim. And if I may, before I sit down, I'd like to say just a few words about our prejudgment interest claim. I'll be very brief. The trustee, of course, has an obligation, a fiduciary obligation to try to maximize the bankruptcy estate, which we were entitled to prejudgment interest under both Delaware and New York. Did you or did you not just on that issue specifically ask in your submission for prejudgment interest under New York law, not Delaware law? We said we were entitled to both. We went through- You said that in your submission that you were entitled to both? Well, we were entitled to the higher of the two. You know, the record as a whole suggests that what you asked for was New York law. And indeed, the district court at one point said, I don't have to consider Delaware law because you were only seeking it under New York law. But if you look at our actual pleading, we did not waive Delaware law. That's way back when. By the time you're asking it to the district court, though, you're telling the district court to apply New York law. No, I'm referring to our post-judgment motion for A783 to 89. What about A907, the Rule 90E motion to alter or amend the judgment? That's the last filing, and there's no mention of Delaware law, and it's just fighting over which measure of New York law should apply to prejudgment interest. Is there any reference at all to Delaware law in that? In the 59E, no, but we're not required to raise it in a 59E motion in order to preserve it. And the reason we focused What the district court would reasonably have understood. Okay, let's hear now a rebuttal from Mr. Rosekranz. Thank you, Your Honors. Very briefly on the jury question, Judge Radji was right. This case was tried as a restitution case. This court said in Pereira that what you look at is how is the case presented to the jury. How do you argue that when the district court charges compensatory damages? Well, the district court charged compensatory damages in the sense of restitution. The two are not. What does that mean? Because the theory of the plaintiff, as presented to the jury, was, and I quote, we seek the return of $118 million. And a plaintiff said, with metronomic regularity in the openings and the summation, tell Mr. Renner to give the money back. Was the verdict form, was that also in terms of compensatory damages? No, the verdict form just said damages. It just asked the question, how much are you rewarding? My concern is that the pleadings and the charge speak in terms of compensatory damages. What you're doing is saying to us, but you know, if you look at the compensatory damages, if you look at what they were arguing for, it was really restitution and nothing else. But if the case is pleaded as compensatory damages, I'm not sure why you would look beyond that in terms of deciding whether it's going to a jury or not. I disagree. The complaint was worded very broadly. It also had a request for a constructive trust. Did you argue to the trial court at any point, this is not a compensatory damage claim? This is a restitutional claim. Yes, of course. When we had the back and forth about withdrawing the request for a jury trial, excuse me, withdrawing the consent for a jury trial, we said, this is a case that is, I mean, we cited the 502D issue. Jermaine, and we also said this is a case that was a restitution case. But remember, plaintiff never argued the point that we're discussing right now, so we didn't have much of a back and forth about the fiduciary breach issue. 502D is the hook here. That is the hook that Jermaine and Hooker and CBI used, and that is about whether there's an allowance or disallowance of, excuse me, whether this  And so the court, looking at it from a District Court perspective, which has had a consent to jury trial, is looking at a pleading seeking compensatory damages, and now has a party that wants to withdraw. I would think that party would have to say to the Court, this is not really a compensatory damages claim. This is a restitution claim. Well, Your Honor, only if the basis of the request for... Does the trial court know that until the case is on trial? No, Your Honor. Let's just, let me just back up. This case, the reason for the withdrawal of the consent was that this case, under Germain and CBI, affects the allowance or disallowance of a claim. That was the basis for the withdrawal of our consent, because you don't have a jury trial right to it. This whole question of whether the damages can be evaluated as compensatory versus unjust enrichment comes in only with respect to the argument, well, wait a minute, but there's a fiduciary breach claim here that would be subject to a jury trial. Plaintiff never made that argument to the District Court. So before the District Court, the argument was Germain is clear, Katchen and Langenkamp are clear. If there is a pending claim of proof of claim, then in this case affects the allowance or disallowance of that proof of claim. That is the basis for finding that there is no jury trial. So that's what we argued. This whole sideshow about damages was an issue that simply wasn't necessary to resolve that question. If I may just address Judge Droney's question about the compromise verdict and in particular the inconsistency. This case exhibited all of the indicia of a compromise. It was a close liability question that the jury reported. Had them hung on the question of insolvency. Is that a meaningful distinction? It is not a meaningful distinction, Your Honor. And plaintiff conceded it was not a meaningful distinction. There is a concession on the record that there is no daylight between the two definitions. Plaintiff never argued. I have two separate jury instructions. For the reason that plaintiff just described. So with respect to insolvency, there's no daylight. 50 years of law says that there is no daylight. Plaintiff. This Court said that it wasn't so clear what the difference. That there wasn't. That they were the equivalent. I'm sorry. This Court in Jarvis v. Ford Motor Company recognized that there was some tension between the two standards. With respect to the issue that plaintiff was pressing, which I concede there is a difference.  And that difference relates only to a defense that was available only to the individual defendants. It was about how to treat their bonuses. Do you treat it as the giving of, excuse me, a transfer of assets or something that was exchanged for value? Can you tell me what you think the difference between an inconsistent and a compromised verdict is? Because that argument sounds to me like it's an inconsistent verdict. So yes, Your Honor, I'd be happy to. An inconsistent verdict is a verdict that simply cannot be reconciled on its face on the basis of the law and the evidence as presented. It can't be reconciled with a finding made in another aspect of the case. Yes, yes. The verdict cannot be reconciled. Because they found them solvent under federal law, you're saying they couldn't find them insolvent under New York law. That's an inconsistent verdict. It was an inconsistent verdict. Right. And that you failed to raise in a timely manner. So what's a compromised verdict? A compromised verdict is a verdict in which the jurors evidently, based upon the full totality of the circumstances, reached a result that is clearly horse trading. Now, it could be clearly horse trading. How can that be when they were given a different instruction about what solvency was under New York law? Well, Your Honor, so that goes to Judge Droney's question. Different instruction with respect to this one aspect about how you treat the bonuses. But the instruction was materially identical with respect to the question of insolvency. And to put a finer point on it, I refer the court to page 28 of our main brief, our yellow brief, where you see at the bottom on footnote 5, you see the two jury instructions. They say the same things in different words. And so to be sure, under New York law, there must be a — excuse me, let me just get to it. Under New York law, it's got to be present fair saleable value. At the bottom of the federal standard, you've got — you've got assets if sold, quote, within a reasonable period of time. Now, plaintiff — I mean, the point that was made was that the federal law is an entity is insolvent if the time of transfer, the sums of its debts, is greater than the fair market value of all its assets. But New York says an entity is insolvent when the present fair saleable value of its assets is less than the amount that will be required to pay its probable liability. Your Honor, as the jury was instructed, those definitions of insolvency were the same. The only difference — The district court charged them that, that those were the same. Well, no, no, I'm sorry. The district court didn't say, I hereby decree that they are the same. But no — You said that's what the district court said. No, no, I'm — what I'm — That they were charged that. No, no, Your Honor. I apologize for misstating. What I'm saying is, based upon the charge presented to the jury and the definition of how you calculate solvency or insolvency, which went on at length, the way you calculate it is the same. The only difference with respect to insolvency that plaintiff points to is about the use of the word present. Now, the use of the word present means that the sale has to be reasonably within the timeframe of the transaction. That's exactly what Federal law says, within a reasonable period of time. And no reasonable juror could have seized upon that difference in words, which was never pointed to by the plaintiff as a basis for a difference between those two to the district court, which never was pointed to to the jury. I'm still having trouble understanding. If that is a convincing argument, it's an argument for inconsistency. They made one finding under New York law and one finding under Federal law that you say is really the same question. And you didn't raise that before that jury was discharged. Correct, Your Honor. So let me address that. To that extent, it seems to be waived. Your Honor, the Rule 49 inconsistent verdict argument, I understand the premise of your point is that it was waived. But you don't waive a compromise verdict argument simply by not raising it under Rule 49. But if it's really an inconsistent verdict argument being labeled compromise verdict, you would have waived it. Well, so no, Your Honor. I mean, the standards are different. The elements are different. It just so happens. I'm not sure I've understood what the element is that you would have to show for a compromise verdict that's different from an inconsistent verdict. Your entire argument seems to me to be they were inconsistent because the same facts had to be found. So if they found solvency federally, they couldn't find insolvency under State law. No, Your Honor. What we're saying is that all of the circumstances surrounding this verdict support the conclusion that this was a compromise verdict. You had a jury that said we are hung on the question of solvency. There was then an Allen charge. There was then a juror who went into distress, followed miraculously almost immediately by a resolution that makes no sense. Can I ask you one other question about a difference? What about good faith? The jury was charged about good faith with the New York law. Is that present in the federal definition, in the federal charge? It is not present in the federal charge. But good faith really related to an issue of willfulness. The party receiving the conveyance was not acting in good faith. That's not present in the federal charge. That's in the state charge only, right? That's correct. Is that a meaningful difference? That's not a difference plaintiff has ever pointed to. It's not a difference that plaintiff argued. But it could support the jury's verdict. That's your standard here. I'm sorry. So New York has good faith? No. It could only cancel. It could only support the flip side. If good faith is in the New York charge and not the jury charge. No. Or the party receiving the conveyance, that's relevant here, was not acting in good faith. Right. So that could only support a jury rejecting the New York charge and accepting the federal charge. But I do want to make sure to address Judge Rett. Yes, Your Honor, of course. Let me just end with just one brief point about the compromise verdict, and that is to respond to Judge Radji's question more directly. Just because an inconsistency can be part of an argument in support of a compromise verdict does not mean that when you waive a Rule 49 argument, you therefore waive the compromise verdict argument. You have not argued in the alternative or in any way that the evidence was insufficient in this case on liability. Is that correct? We argued to the district court. You have not argued that to us. Not to this court. What I would argue to this court is at the point at which the jury came back with this verdict, it would have been an abuse of discretion to do anything other than say, this is a compromise verdict, the jury has abandoned its role, and we will not let the jury go back and figure out how to redo its compromise. My point, though, is that a compromise verdict has to obviously be inconsistent with the facts. And so if you're agreeing that the jury could have found insolvency under both standards, it just couldn't find different answers, then you don't have a compromise argument. You only have an inconsistent verdict argument. Help us out on that. Well, Your Honor, I would refer the court to the Sixth Circuit's opinion in Heil, which said exactly the opposite. A Rule 49 compromise verdict argument was waived, but it was brought back again in the very same argument as a 59e argument. And the court said, in keeping with the opinion from the Eleventh Circuit writer, that these are totally different claims. And if we see the totality of indicia of compromise. They're totally different claims. We're trying to figure out how yours is totally different when you're not challenging the ability to find insolvency under both. What I'm saying, Your Honor, is that there is an inconsistency that is evidence of the compromise. But when we have that, the compromise is established. Thank you. Thank you, Your Honors. We're going to take the case under advisement.